**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

SHAVOHNNA BRISCO,

                                     Plaintiff,

                      -*against*-

BREADROLL, LLC, d/b/a/ MAISON KAYSER USA,
ELSHAMMA MCNEAL, *Individually*,
and CLAUDIO TARALLO, *Individually*,

                                  Defendants.

-------------------------------------------------------------------X

**Docket No.**

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff, SHAVOHNNA BRISCO, by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

<strong><u>NATURE OF THE CASE</u></strong>

1. Plaintiff complains pursuant to <u>Title VII of the Civil Rights Act of 1964</u>, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), and the <u>New York State Human Rights Law</u>, <u>New York State Executive Law</u> §296, et. seq. ("NYSHRL"), the <u>New York City Human Rights Law</u>, <u>New York City Administrative Code</u> § 8-107, et seq. ("NYCHRL"), <u>New York State Labor Law Section 740</u>, N.Y. Lab. Law § 740, and seeks damages to redress the injuries Plaintiff has suffered as a result of **(1)** being **<u>discriminated</u>** against on the basis of her **<u>sex/gender</u>**, in that Plaintiff was **<u>subjected to a hostile work environment by way of the Defendants' sexual harassment of Plaintiff</u>**, and **(2)** **<u>retaliated against for complaining of the sexual harassment,</u>** which ultimately resulted in Plaintiff's **<u>constructive termination</u>**.

<strong><u>JURISDICTION AND VENUE</u></strong>

2.    Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §§1331 and 1343.

3.    The Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. §1367.

4.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391(b), as the acts complained of occurred in that district.

## PROCEDURAL PREREQUISITES

5.    Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC") on or about September 11, 2018.

6.    Plaintiff received a Notice of Right to Sue from the EEOC, dated December 3, 2018, with respect to the herein charges of discrimination.

7.    This Action is being commenced within ninety (90) days of receipt of said Right to Sue.

## PARTIES

8.    At all times relevant to the Complaint, Plaintiff, who is an African American female, was employed by Defendants BREADROLL, LLC, d/b/a/ MAISON KAYSER USA ("MAISON KAYSER"), as a truckdriver.

9.    DEFENDANT MAISON KAYSER is a domestic business corporation doing business in the state of New York and operating many locations throughout the City of New York including, but not limited to, several locations in the boroughs of Manhattan and the Bronx, which is where most of the events described in this Complaint occurred. DEFENDANT MAISON KAYSER maintains a physical business address at 178 Bruckner Boulevard, Bronx, New York, 10454.

10.   Upon information and belief, DEFENDANT MAISON KAYSER employs more than 15

employees.

11. PLAINTIFF was discriminated against and subjected to constant, continuous and systematic unwanted sexual harassment and inappropriate comments and other inappropriate conduct by her direct manager and/or direct supervisor, DEFENDANT ELSHAMMA MCNEAL ("MCNEAL"). At all times relevant to the Complaint, DEFENDANT MCNEAL was the Transportation Supervisor for DEFENDANT MAISON KAYSER. At all times, DEFENDANT MCNEAL had the authority to affect the terms and conditions of PLAINTIFF'S employment. DEFENDANT MCNEAL is being sued herein in his official and individual capacities.

12. DEFENDANT MCNEAL utilized his position/status as a manager/supervisor at DEFENDANT MAISON KAYSER, to subject PLAINTIFF, who was a newly-hired employee, to, *inter alia,* gender discrimination and sexual harassment in that DEFENDANT MCNEAL subjected the PLAINTIFF to unwanted sexual comments and/or an uncomfortable sexually hostile work environment.

13. PLAINTIFF complained to and rebuffed DEFENDANT MCNEAL about his sexual harassment and gender discrimination against PLAINTIFF who ignored PLAINTIFF'S complaints and allowed for the hostile environment to continue.

14. Soon after PLAINTIFF began to complain of the sexual harassment and resist DEFENDANT MCNEAL'S unwanted sexual advances, DEFENDANT MCNEAL started to question and complain about PLAINTIFF'S work, and DEFENDANT MCNEAL also continued to behave towards PLAINTIFF in a more hostile and aggressive manner.

15. DEFENDANT MCNEAL'S ongoing and continuous inappropriate conduct caused PLAINTIFF'S work environment to become intolerable and unsafe.

16. PLAINTIFF was discriminated against and subjected to discrimination and retaliation, including being subjected to unsafe working conditions and termination by her direct manager and/or direct supervisor DEFENDANT CLAUDIO TARALLO ("TARALLO").   At all times relevant to the Complaint, DEFENDANT TARALLO was the commissary manager for DEFENDANT MAISON KAYSER.   At all times, DEFENDANT TARALLO had the authority to affect the terms and conditions of PLAINTIFF'S employment. DEFENDANT TARALLO is being sued herein in his official and individual capacities.

17. After DEFENDANT TARALLO became aware of the harassment against PLAINTIFF by DEFENDANT MCNEAL, DEFENDANT TARALLO retaliated against PLAINTIFF by repeatedly subjecting PLAINTIFF to unsafe working conditions.

18. The work environment at DEFENDANT MAISON KAYSER eventually became so hostile, unsafe, retaliatory and intolerable to PLAINTIFF that PLAINTIFF was forced to quit her job at DEFENDANT MAYON KAISER.

19. As such, Plaintiff was wrongfully constructively terminated from her position of employment with the DEFENDANT MAISON KAYSER.

20. PLAINTIFF brings this Action charging that DEFENDANTS, collectively and/or individually, subjected PLAINTIFF to an ongoing and continuous hostile working environment, discrimination, retaliation and sexual harassment on the basis of her gender and/or sex.

## FACTUAL ALLEGATIONS

21.    PLAINTIFF was hired to begin working at/for DEFENDANT MAISON KAYSER on June 12, 2018 as a truckdriver with a pay rate of $18.00 per hour.  Plaintiff typically worked approximately 40 hours per week.  Accordingly, Plaintiff's yearly compensation would have been approximately $37, 440.00.

22.  To obtain her job, Plaintiff was interviewed by DEFENDANTS MCNEAL AND TARALLO.

23.  Plaintiff's employment with DEFENDANT MAISON KAYSER was terminated on July 10, 2018 due to the DEFENDANTS sexual harassment and gender discrimination against Plaintiff.

24.  Thus, each of the allegations set forth herein occurred during the approximate four-week span of Plaintiff's employment with the DEFENDANTS.

25.  Upon information and belief, Plaintiff was the only woman who worked in this transportation group for Defendant MAISON KAYSER.

26.  PLAINTIFF was hired by DEFENDANTS MCNEAL AND TARALLO.

27.  Plaintiff's job responsibilities were to pick up a MAISON KAYSER truck and MAISON KAYSER food from a MAISON KAYER commissary in the Bronx located at 198 Bruckner Boulevard, and then drive the truck to a MAISON KAYSER commissary in New Jersey to pick up additional MAISON KAYSER FOOD.  After making these pick-ups with the truck, Plaintiff was required to drive the MAISON KAYSER truck and deliver the food to various MAISON KAYSER locations throughout the lower section of the borough of Manhattan in the City and State of New York.

28.  At all times relevant to the Complaint, PLAINTIFF was an above-satisfactory employee, who performed her duties without any performance issues. PLAINTIFF was never written up or subject to disciplinary action as a result of her work at DEFENDANT MAISON KAYSER.

29.  PLAINTIFF was qualified for her position/title.

30. June 13, 2018 was the date of Plaintiff's first shift with the DEFENDANT MAISON KAYSER, and PLAINTIFF reported for work as scheduled on that date.

31. The DEFENDANTS' sexual harassment of PLAINTIFF began immediately.

32. On June 13, 2018, PLAINTIFF was assigned to begin her employment training with DEFENDANT MCNEAL.

33. On June 13, 2018, PLAINTIFF became the victim of continuous and ongoing sexual harassment and a hostile work environment by her manager/supervisor DEFENDANT MCNEAL.

34. During the first two weeks of Plaintiff's employment, she was scheduled to be in the training part of her employment which was supposed to involve Plaintiff riding in and driving a truck with different MAISON KAYSER truck drivers so Plaintiff could learn the various driving routes that MAISON KAYSER drivers were supposed to drive to deliver food to store locations.

35. However, Plaintiff's employment training did not take place as it was supposed to.

36. Rather than ride along on different routes with different drivers, DEFENDANT MCNEAL changed Plaintiff's training schedule every shift and, rather than allow Plaintiff to ride along with other drivers, forced Plaintiff to ride along with him and kept Plaintiff with him on his route and in his truck for nearly the entirety of Plaintiff's training.

37. DEFENDANT MCNEAL'S decision to do this denied Plaintiff the ability to learn the other driving shifts which she would need during her employment with DEFENDANT MAISON KAYSER.

38.    During the first week of Plaintiff's employment with DEFENDANT MAISON KAYSER, DEFENDANT MCNEAL'S statements to Plaintiff became increasingly aggressive, unprofessional, sexually charged, and personal.  All of this was unwelcome to Plaintiff.

39.    For example, during Plaintiff's June 13th shift, DEFENDANT MCNEAL began bragging to Plaintiff about different cars he owned as if he were trying to impress Plaintiff on a personal level. On this date, DEFENDANT MCNEAL, without any prompting from Plaintiff, also showed Plaintiff pictures of Defendant MCNEAL'S child's mother.

40.    In and around the first week of Plaintiff's employment with DEFENDANT MAISON KAYSER, DEFENDANT MCNEAL also made comments about Plaintiff's body by stating to Plaintiff, in a sexually suggestive tone, "You have a bright future behind you." DEFENDANT MCNEAL made this comment to Plaintiff as he leered at Plaintiff's body.

41.    DEFENDANT MCNEAL also regularly commented on Plaintiff' breasts by telling Plaintiff "You're going to have to hold those down" while staring at Plaintiff's breasts every time their delivery truck hit a bump on the road.

42.    DEFENDANT MCNEAL spoke to Plaintiff in a manner that was shocking, unprofessional, and sexually oriented. Further, DEFENDANT MCNEAL often attempted to intimidate Plaintiff by creating a larger-than-life personality in that he would often yell and curse at Plaintiff and around Plaintiff.

43.    In a further attempt to intimidate Plaintiff, DEFENDANT MCNEAL frequently wore a t-shirt that read "Savage As Fuck," and he often wore a hat that said "How Can I Offend You Today?"

## DEFENDANT MCNEAL GRABS PLAINTIFF'S
## BUTTOCKS AND PLACES HIS FINGERS NEAR HER VAGINA

44.   By June 18, 2018, five days after Plaintiff began working for the DEFENDANTS with DEFENDANT MCNEAL, DEFENDANT MCNEAL started to physically and sexually abuse and assault Plaintiff.

45.   On June 18, 2018, at the Union Square Maison Kayser location at 841 Broadway, New York, New York, DEFENDANT MCNEAL instructed Plaintiff to remove crates from the truck.  As Plaintiff was complying with DEFENDANT MCNEAL'S directive to do this, Plaintiff had some difficulty getting into the truck which she had to do in order to get a handle on each crate and remove it.  As Plaintiff struggled to get into the truck at one point, DEFENDANT MCNEAL came up behind Plaintiff and grabbed Plaintiff's buttocks and inner thigh, placing his fingers near Plaintiff's vagina under the pretext of trying to help Plaintiff into the truck.

46.   However, Plaintiff had not asked for any assistance in getting into the vehicle, nor did DEFENDNAT MCNEAL warn Plaintiff that he was coming up behind her in the manner that he did.

47.   In an attempt to stop DEFENDANT MCNEAL from touching Plaintiff, in response to DEFENDANT MCNEAL grabbing Plaintiff's buttocks and placing his fingers near her vagina, Plaintiff coldly said "Got it," meaning she did not need DEFENDANT MCNEAL's assistance.

48.   In response, DEFENDANT MCNEAL leered and grinned at Plaintiff said to Plaintiff "You sure do!"

49.   DEFENDANT MCNEAL's physical assault of Plaintiff was extremely upsetting, threatening and unsettling to Plaintiff.

8

50.     Nonetheless, Plaintiff – still in the training and early phase of her employment with
        DEFENDANTS – continued to do her job that day.

51.     Following this June 18, 2018 incident, Plaintiff began to dread going into work and she
        dreaded what each approaching work day would bring as she was forced to work under the
        authority of DEFENDANT MCNEAL.

52.     As Plaintiff continued to resist and not acquiesce to DEFENDANT MCNEAL's sexual
        advances and assaults, DEFENDANT MCNEAL became increasingly hostile, rude, and
        cold to Plaintiff, making her work experience even more miserable and dreadful.
        DEFENDANT MCNEAL also began to blatantly ignore Plaintiff's questions, despite the
        fact that he would not let her train with anyone else. Stated differently, DEFENDANT
        MCNEAL *forced* Plaintiff to work with him every day, but he would often ignore her while
        they were working together.

53.     Moreover, DEFENDANT MCNEAL intentionally heightened Plaintiff's dread and fear by
        always driving the truck in an intentionally erratic and unsafe manner.  In response to this,
        Plaintiff would ask DEFENDANT MCNEAL to stop driving in such a way, but this only
        encouraged DEFENDANT MCNEAL to continue driving erratically.

54.     During the week of June 18, 2018, Plaintiff, when speaking to another coworker on the
        truck, referred to DEFENDANT MCNEAL as a supervisor, which inexplicably angered
        DEFENDANT MCNEAL as he began to harangue Plaintiff about the use of the word
        "supervisor" in reference to himself.

**DEFENDANT MCNEAL REFERENCES PLAINTIFF'S BOYFRIEND'S PENIS**

55.     A few days after June 18, 2018, on or about June 20, 2018, when Plaintiff was working
        again with DEFENDANT MCNEAL, Plaintiff was trying to hoist a hand truck onto the

9

curb of a sidewalk while making a delivery at a Maison Kayser restaurant location at 841 Broadway near Union Square.

56. As Plaintiff struggled to hoist the hand truck on the sidewalk, DEFENDANT MCNEAL – rather than help Plaintiff – leaned into Plaintiff's personal space within an inch of Plaintiff' ear to say "Act like Nate is behind you with the wood."

57. In an attempt to discourage DEFENDANT MCNEAL from sexually harassing Plaintiff, Plaintiff had previously mentioned to DEFENDANT MCNEAL that she had a boyfriend named "Nate."

58. DEFENDANT MCNEAL'S reference to "wood" was an obvious, inappropriate, and sexual metaphor for an erect penis.

59. Plaintiff had done nothing to elicit or encourage this comment from DEFENDANT MCNEAL, and this comment shocked and disgusted Plaintiff.

60. In response to this inappropriate comment from DEFENDANT MCNEAL, Plaintiff did not make any inappropriate comments to DEFENDANT MCNEAL, nor did she laugh, smile, or do anything that would have encouraged DEFENDANT MCNEAL to continue behaving in this manner.

61. Instead, Plaintiff said "Oh, Brother!" in an exasperated tone, attempted to ignore DEFENDANT MCNEAL, and continued working.

## DEFENDANT MCNEAL ROUGHLY GRABS PLAINTIFF'S FACE

62. Later this same day, on or about June 20, 2018, DEFENDANT MCNEAL became enraged with Plaintiff for using her GPS on the job.

63. By way of background, Plaintiff notes that during Plaintiff's job interview, DEFENDANTS MCNEAL and TARALLO asked Plaintiff if she owned a GPS. Plaintiff

responded that she does own a GPS. Defendants MCNEAL and TARALLO acted pleased and told Plaintiff that the GPS would be helpful for her job with them a truck driver, and they asked Plaintiff to bring it with her to work.

64.  As further background, as Plaintiff and DEFENDANT MCNEAL drove their routes together, often there would be a "helper" (another employee of the DEFENDANTS) present in the vehicle.

65.  In an attempt to gain the knowledge she needed during training, Plaintiff would often ask this helper for information about the routes and where to go while driving. In response to this, DEFENDANT MCNEAL always interrupted and threatened the helper.

66.  On this day (a few days after June 18, 2018 "WOOD" incident), Plaintiff and DEFENDANT MCNEAL were driving their delivery routes in a truck with a Maison Kayser employee and "helper" named "Patrick."

67.  DEFENDANT MCNEAL was, as usual, ignoring Plaintiff's requests for assistance in navigating the routes, so Plaintiff was using her GPS.

68.  When DEFENDANT MCNEAL observed Plaintiff using her GPS, DEFENDANT MCNEAL aggressively said to Plaintiff "Put that shit away." Plaintiff responded to DEFENDANT MCNEAL that using the GPS helped her to learn the routes, which she needed to do in order to do her job.

69.  This enraged DEFENDANT MCNEAL.

70.  Because DEFENDANT MCNEAL instructed Plaintiff to stop using her GPS, Plaintiff asked Patrick for help in navigating the routes.

71.  In response to Plaintiff's request to Patrick for assistance, DEFENDANT MCNEAL snapped at Patrick and commanded "I swear I will write your ass up! Don't tell her nothing! There is a method to my madness!"

72.  As DEFENDANT MCNEAL, Plaintiff, and Patrick arrived with their truck to their next Maison Kayser location in lower Manhattan to deliver products, they exited the truck.

73.  Plaintiff was focused on doing her job, but DEFENDANT MCNEAL took his hand and grabbed Plaintiff's face by wrapping it around her jaw and cheeks, and aggressively and angrily hissed at Plaintiff "You're not listening. If you listen, everything will be OK."

74.  DEFENDANT MCNEAL was intent on depriving Plaintiff of proper training so that she would be dependent on him.

75.  Indeed, as Plaintiff's training period was approaching, DEFENDANT MCNEAL would repeatedly tell Plaintiff that he was not going to train her properly.  On one occasion in mid-June 2018, DEFENDANT MCNEAL told Plaintiff "I'm gonna sit back and I'm not gonna tell you anything and you're gonna have to drive this whole route."  DEFENDANT MCNEAL would then laugh at and mock Plaintiff about the possibility of her failing due to DEFENDANT MCNEAL's refusal to properly train Plaintiff.

76.  However, Plaintiff, still trying to focus on doing her job, would record routes in the GPS so that she could properly complete her job once she no longer had to work alongside DEFENDANT MCNEAL.

77.  Plaintiff's use of her GPS continued to enrage DEFENDANT MCNEAL and he would say – despite his refusal to properly train Plaintiff – that all Plaintiff had to do was to "Pay attention."

## DEFENDANT MCNEAL FORCES PLAINTIFF TO HUG HIM

78.   Later this dame day, on or about June 20, 2018, Plaintiff returned to the Bronx Commissary and had resolved to complain about DEFENDANT MCNEAL to Jennifer Perez, the administrative assistant for the Bronx Commissary.

79.   As Plaintiff walked towards Ms. Perez's office, Plaintiff observed that DEFENDANT MCNEAL was already in the office.

80.   Upon DEFENDANT MCNEAL seeing Plaintiff, he immediately got up from his seat in front of Ms. Perez and commanded Plaintiff to "Come here and give me a hug."

81.   Plaintiff did not comply with this command, so DEFENDANT MCNEAL repeated his command two more times and said to Plaintiff "Come here and give me a hug."

82.   Ms. Perez witnessed DEFENANT MCNEAL make each of these inappropriate commands to Plaintiff.

83.   At no time did Ms. Perez interfere on Plaintiff's behalf against DEFENDANT MCNEAL.

84.   Plaintiff, wanting to get away from DEFENDANT MCNEAL, finally, reluctantly acceded to DEFENDANT MCNEAL'S commands, and gave him a distant hug.

85.   At this time, Ms. Perez jokingly said "Uh oh. What did he do to need a hug from you? What did he do?"

86.   In response to Plaintiff's reluctant hug, DEFENDANT MCNEAL continued badgering Plaintiff in front of Ms. Perez and said "Oh that's not a hug.  You gonna do me like that? I can't get a real hug?"

87.   Plaintiff replied to DEFENDANT MCNEAL by saying, in front of Ms. Perez, "I am not going to press my body against your body.  I do not want to feel anything against me or be tightly embraced by you."

13

88.     Obviously quite aware of what he had put Plaintiff through on this day, DEFENDANT
        MCNEAL responded to Plaintiff by saying "Go home and get some rest.  You had a hard
        day."

89.     Plaintiff then left work that day feeling hopeless, regretful, and shocked by the series of
        disgusting and intimidating events that had transpired on or about June 20, 2018.

<u>**DEFENDANT MCNEAL TELLS PLAINTIFF**</u>
<u>**"I AM GOING TO POP YOUR CHERRY" AND**</u>
<u>**FORCES HER TO ENTER A FREEZER**</u>

90.     Towards the very end of Plaintiff's training period – after suffering repeated and egregious
        physical, sexual, mental, and emotional abuse and assault by DEFENDANT MCNEAL –
        a supervisor and manager of DEFENDANT MAISON KAYSER – Plaintiff, without
        explanation, was placed on a different training route with a different driver.

91.     On June 28, 2018, Plaintiff was at the New Jersey commissary of the DEFENDANT
        MAISON KAYSER loading products into her truck to begin driving her Manhattan routes
        for that day.

92.     At this time, DEFENDANT MCNEAL arrived at the commissary where Plaintiff and
        several other MAISON KAYSER employees were present,

93.     DEFENDANT MCNEAL spotted Plaintiff and began loudly and aggressively repeating
        Plaintiff's last name. Plaintiff ignored DEFENDANT MCNEAL, and DEFENDANT
        MCNEAL asked another employee at the scene "How is Brisco doing?"

94.     All of the DEFENDANT MAISON KAYSER employees who heard this – all males –
        responded to DEFENDANT MCNEAL and said "Brisco is doing fine."

95.    Plaintiff then stated that she knew DEFENDANT MCNEAL's route (the downtown Manhattan Maison Kayser route) and that she had been taking notes in a composition notebook she bought for herself.

96.    In response to these comments from Plaintiff, DEFENDANT MCNEAL became loud and insulting – once again demonstrating his disruptive and larger-than-life presence.

97.    DEFENDANT MCNEAL then said to Plaintiff, in front of the other male coworkers who were present "Oh, yea, well I have been too nice to you.  Now its time for me to pop your cherry."

98.    The other DEFENDANT employees who overheard this appeared shocked, and some even hung their heads in disgust.  However, no one intervened on behalf of Plaintiff.

99.    DEFENDANT MCNEAL then continued with his tirade, repeating that he needed to "pop" Plaintiff's "cherry."  DEFENDANT MCNEAL also told Plaintiff "You need to know what it is like to be cold. I am going to assign you to frozen dough." DEFENDANT MCNEAL continued to repeat this frightening tirade and profane onslaught such that Plaintiff's fear for her safety increased and she began to panic.

100.    During this threatening tirade, DEFENDANT MCNEAL commanded Plaintiff to get into the freezer which was located in the area were Plaintiff, DEFENDANT MCNEAL, and the other male co-workers were standing.  Plaintiff did not comply with DEFENDANT MCNEAL's commands and order for Plaintiff to step into the freezer, so DEFENDANT MCNEAL became increasingly aggressive in his tone.

101.    Plaintiff eventually turned to her coworkers who were standing around and watching and asked them if they would come into the freezer with her, but none of them did.

102.    Instead, some of the onlooking coworkers told Plaintiff "You will be OK."

103.   Eventually, fearing for her safety, Plaintiff stepped into the freezer as ordered by DEFENDANT MCNEAL.

104.   DEFENDANT MCNEAL immediately closed and locked the freezer door behind Plaintiff, and Plaintiff heard the engine of the freezer get louder, and she saw frost begin to rise from the walls of the interior of the freezer.

105.   Within seconds, Plaintiff was freezing cold.  Plaintiff was forced to remain in the freezer for what seemed like an eternity, but which may have been less than two minutes.

106.   DEFENDANT MCNEAL eventually opened the freezer door and let Plaintiff out.

107.   Plaintiff continued to work in fear for her personal safety, convinced that DEFENDANT MCNEAL was unstable and focused on physically harming her and destroying her job with the DEFENDANTS.

## DEFENDANT TARALLO SPEAKS TO PLAINTIFF

108.   On or about June 30, 2018, Jennifer Perez, the administrative assistant for the DEFENDANT MAISON KAYSER Bronx Commissary office, contacted Plaintiff and told her that DEFENDANT TARALLO wanted to speak to her.

109.   When Plaintiff arrived at the DEFENDANTS' Bronx Commissary office, DEFENDANT MCNEAL was there fiddling with his phone.

110.   About ten minutes after Plaintiff arrived at the Bronx Commissary, DEFENDANT MCNEAL left without explanation and DEFENDANT TARALLO appeared by Skype to talk to Plaintiff.

111.   DEFENDANT TARALLO informed Plaintiff that he had "observed something disturbing on the cameras the other night," and DEFENDANT TARALLO asked Plaintiff "Did [Defendant MCNEAL] lock you in the freezer."  Plaintiff replied "Yes."

16

112. Later, sometime after Plaintiff's conversation with DEFENDANT TARALLO ended, Plaintiff found out that DEFENDANT MCNEAL had been fired.

## DEFENDANT TARALLO RETALIATES AGAINST PLAINTIFF FOR COMPLAINING OF DEFENDANT MCNEAL'S ABUSE

113. As of the first week in July 2018, Plaintiff began driving DEFENDANT MAISON KAYSER delivery routes on her own.

114. At this time, Plaintiff began to see how incomplete her training had been under DEFENDANT MCNEAL.

115. Because DEFENDANT MCNEAL had not properly trained Plaintiff, she had trouble navigating the delivery routes mandated by DEFENDANT MAISON KAYSER.

116. Plaintiff complained about this to Jennifer Perez, the DEFENDANT MAISON KAYSER Bronx Commissary administrative assistant. Ms. Perez simply told Plaintiff to review the documents she had received at the beginning of her employment.

117. However, reviewing these documents was not helpful and could not be helpful because the training is intended to be done with another driver on company time so that the trainee (i.e. Plaintiff) can make a visual and physical record without the interference of dealing with the road and traffic.

118. At this time, Plaintiff also noticed that her delivery truck had multiple, unsafe defects, such as the steering wheel having too much slack, and broken mirrors.

119. Plaintiff also noticed that she was being given equipment pouches at the beginning of her shifts that had incomplete equipment. The pouches were supposed to carry items such as a company gas card, store master keys, an easy pass, and a device that controls the gate to the commissary to allow DEFENDANT MAISON KAYSER truck drivers to load and

unload product. Due to the incomplete equipment given to Plaintiff, she was often late for her deliveries with the DEFENDANT.

120. Plaintiff made note of the vehicle defects and equipment deficiencies and wrote them down and gave the paper to DEFENDANT TARALLO.

121. Plaintiff also informed DEFENDANT TARALLO that the vehicles lacked "DVIR Sheets" which are sheets wherein truck drivers would note and detail truck defects in order to bring the defects to the attention of management.

122. DEFENDANT TARALLO pointedly responded to these complaints from Plaintiff – which began less than a week after DEFENDANT MCNEAL'S termination – by telling Plaintiff that "those responsibilities had been passed to [DEFENDANT MCNEAL] and [DEFENDANT MCNEAL] is no longer working here."

123. The tone of DEFENDANT TARALLO's voice indicated that he intended Plaintiff to suffer because DEFENDANT MCNEAL no longer worked at DEFENDANT MAISON KAYSER.

124. Plaintiff nonetheless provided DEFENDANT TARALLO with a list of defects for her truck. DEFENDANT TARALLO appeared visibly annoyed that Plaintiff was recording information about truck defects and complaining about them, especially since DEFENDANT MCNEAL was no longer employed the DEFENDANTS.

125. The trucks Plaintiff was forced to drive were so defective and dangerous that Plaintiff feared she would get into a catastrophic car accident, gravely injuring herself and other members of the public.

126. Plaintiff continued to complain to DEFENDANTS about her deficient training by DEFENDANT MCNEAL, the defective trucks, as well as incomplete equipment.

18

127.    On or about July 10, 2018, DEFENDANT TARALLO reprimanded Plaintiff for being late to a delivery.

128.    Plaintiff once again explained to DEFENDANT TARALLO that she had not been trained properly by DEFENDANT MCNEAL, and that, since DEFENDAT MCNEAL had been terminated, Plaintiff was being forced to drive defective trucks and she was being forced to work with incomplete equipment.  Plaintiff explained that all of these factors caused her to be late to deliveries.

129.    DEFENDANT TARALLO did not offer any solution to Plaintiff, making it clear to Plaintiff that she was going to be continually assigned to defective vehicles until she resigned.

130.    Based on the temporal proximity between Plaintiff's complaints about DEFENDANT MCNEAL, and Plaintiff being forced to drive in defective trucks with incomplete equipment with no knowledge of the routes, it is clear that the DEFENDANTS retaliated against Plaintiff for her complaints about DEFENDANT MCNEAL and that the DEFENDANTS actively worked to hasten Plaintiff's employment termination with the DEFENDANTS.

131.    In fact, Plaintiff had been a stellar employee and was eager to succeed.  The conditions under which she was forced to work even after DEFENDANT MCNEAL was fired were specifically designed to retaliate against Plaintiff and to lay the groundwork for adverse employment action against Plaintiff in retaliation for PLAINTIFF rejecting DEFENDANT MCNEAL's unwanted sexual advances and for complaining about DEFENDANT MCNEAL's sexual advances.

132.   According, on or about July 10, 2018, after less than one month of employment with the DEFENDANTS, Plaintiff was forced to resign from her employment with the DEFENDANTS.

133.   The working conditions to which Plaintiff was subjected by the DEFENDANTS were so hostile, and constituted severe and pervasive sexual harassment and gender discrimination, and a threat to Plaintiff's safety and the safety of the general public, such that no reasonable person in Plaintiff's position could endure these conditions and any such reasonable person faced with these conditions would be forced and compelled to resign.

134.   DEFENDANTS intentionally harassed and discriminated against PLAINTIFF and retaliated against her for participating in the protected activity of complaining about sexual harassment in the work place and for complaining about unsafe working conditions with regard to the defective trucks.

135.   Despite Defendant MCNEAL's sexual harassment of Plaintiff, and despite DEFENDANTS' knowledge of this harassment, Plaintiff was still forced to work with DEFENDANT MCNEAL before he was terminated.

136.   That all times, DEFENDANTS were acting pursuant to their statuses, authority and positions as directors, administrators and/or agents of DEFENDANT MAISON KAYSER.

137.   *But for* his position as a supervisor, administrator and/or agent of MAISON KAYSER, DEFENDANT MCNEAL would not have been able to sexually harass and discriminate against PLAINTIFF in the above-described manner.

138.   DEFENDANTS, including DEFENDANT MCNEAL, would not have harassed PLAINTIFF but for her sex/gender.

139. DEFENDANTS, including DEFENDANTS MCNEAL AND TARALLO, would not have retaliated against PLAINTIFF, nor subjected her to the hostile work environment, but for her complaint and refusals of DEFENDANT MCNEAL's sexual advances.

140. DEFENDANTS, individually and collectively, had no good faith business or justification for the actions taken against PLAINTIFF as described herein.

141. As a result of the continuous, ongoing, repetitive and systematic sexual harassment to which PLAINTIFF has been subjected, DEFENDANT MCNEAL'S and DEFENDANT TARALLO's actions against PLAINTIFF constituted a continuing violation.

142. As a result of DEFENDANTS' actions, PLAINTIFF felt, and continues to feel, extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

143. As a result of DEFENDANTS' discriminatory and intolerable treatment, PLAINTIFF suffered, and continues to suffer, emotional distress.

144. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered, and will continue to suffer, special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering and other non-pecuniary losses.

145. As DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, PLAINTIFF demands punitive damages as against all DEFENDANTS', jointly and severally.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
*(Against Defendant Maison Kayser)*

146.    PLAINTIFF repeats and realleges each and every allegation made in the above paragraphs of this complaint.

147.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq., for relief based upon the unlawful employment practices of the above-named DEFENDANTS. PLAINTIFF complains of DEFENDANTS' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex/gender.

148.    DEFENDANTS engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against PLAINTIFF because of her sex/gender.

149.    Director DEFENDANT MCNEAL utilized his position/status as a manager/supervisor/administrator at MAISON KAYSER to subject PLAINTIFF, who was a newly-hired employee, to *inter alia,* sexual harassment in that DEFENDANT MCNEAL subjected the newly-hired PLAINTIFF to unwanted sexual comments, flirting, staring, intimidation, sexual assault, assault, and an uncomfortable sexually-hostile work environment.

150.    DEFENDANTS disregarded PLAINTIFF'S numerous complaints as well as their obligations as directors/administrators, who had a duty to act in the face of sexual harassment complaints made by PLAINTIFF and allowed the sexually-hostile work environment to continue and escalate against PLAINTIFF.

151.    Further, DEFENDANTS ignored and minimized PLAINTIFF'S numerous complaints and requests for assistance and/or protection against the hostile environment she faced at

MAISON KAYSER.

152.   When PLAINTIFF complained to her supervisors DEFENDANTS MCNEAL AND TARALLO about the sexual harassment, the environment became even more hostile in retaliation.

153.   As a result of DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

154.   DEFENDANTS had no good faith business justification for the actions against PLAINTIFF as described herein.

155.   As a result of the acts and conduct complained of herein, PLAINTIFF has suffered special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering and other non-pecuniary losses.

156.   DEFENDANTS' conduct was malicious, willful and conducted with full knowledge of the law.

157.   PLAINTIFF is entitled to the maximum amount allowed under this statute/law.

### AS A SECOND CAUSE OF ACTION
### FOR RETALIATION UNDER TITLE VII
#### (Against Defendant Mason Kayser)

158.   PLAINTIFF repeats and realleges each and every allegation made in the above paragraphs of this complaint.

159.   Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this

subchapter."

160.  PLAINTIFF was retaliated against by DEFENDANTS MCNEAL and TARALLO for engaging in protected activity. First, PLAINTIFF rebuffed DEFENDANT MCNEAL's advances. Second, PLAINTIFF complained to DEFENDANT TARALLO about DEFENDANT MCNEAL'S conduct.

161.  Following PLAINTIFF'S complaints, PLAINTIFF was subjected to a worse hostile environment permeated with discriminatory ridicule, comments, further sexual harassment, adverse employment actions, and other retaliatory behavior.

162.  DEFENDANTS MCNEAL AND TARALLO also began, all of a sudden, to criticize PLAINTIFF'S work quality and job responsibilities and subject PLAINTIFF to adverse employment actions.

163.  DEFENDANTS MCNEAL AND TARALLO also placed Plaintiff in defective trucks and subjected her to extremely dangerous working condition in retaliation for her complaints of sexual harassment against DEFENDANT MCNEAL.

164.  Meanwhile, DEFENDANT MCNEAL did not cease and continued his ongoing and continuous sexual harassment of PLAINTIFF - in an effort to further harass and annoy PLAINTIFF for complaining.

165.  DEFENDANTS had no valid business justification for the retaliatory and abusive actions taken against PLAINTIFF following her engagement in protected activity.

166.  DEFENDANTS placed PLAINTIFF in an awkward, hostile and uncomfortable employment position as the victim or sexual harassment and discrimination.

167.  As a result of DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

168.   As a result of the acts and conduct complained of herein, PLAINTIFF has suffered special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering and other non-pecuniary losses.

169.   DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

170.   PLAINTIFF is entitled to the maximum amount allowed under this statute/law.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW
*(Against Defendant Maison Kayser)*

171.   PLAINTIFF repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

172.   New York State Executive Law §296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's race. . . [or] sex, to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

173.   DEFENDANT   MCNEAL   utilized   his   position/status   as   a manager/supervisor/administrator at MAISON KAYSER, to subject PLAINTIFF, who was a newly-hired employee, to *inter alia,* sexual harassment in that DEFENDANT MCNEAL subjected the newly-hired PLAINTIFF to unwanted sexual comments, flirting, staring, intimidation, sexual assault, assault, and an uncomfortable sexually-hostile and threatening work environment.

174.   DEFENDANTS MCNEAL and TARALLO disregarded PLAINTIFF'S numerous complaints as well as their obligations as directors/administrators, who had a duty to act in the face of sexual harassment complaints made by PLAINTIFF and allowed and continue to

allow the sexually-hostile work environment to continue and escalate against PLAINTIFF.

175. Further, DEFENDANTS ignored and minimalized PLAINTIFF'S numerous complaints and requests for assistance and/or protection against the hostile environment she faced at MAISON KAYSER.

176. When PLAINTIFF complained to her supervisor director of nursing DEFENDANT TARALLO about the sexual harassment, the environment became even more hostile in retaliation, and Plaintiff was forced to drive defective trucks and was placed in extremely dangerous working conditions.

177. As a result of DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

178. DEFENDANTS had no good faith business justification for the actions against PLAINTIFF as described herein.

179. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering and other non-pecuniary losses.

180. DEFENDANTS' conduct was malicious, willful and conducted with full knowledge of the law.

181. PLAINTIFF is entitled to the maximum amount allowed under this statute/law.

## AS A FOURTH CAUSE OF ACTION FOR RETALIATION
## UNDER NEW YORK STATE EXECUTIVE LAW
### *(Against Defendant Maison Kayser)*

182.    PLAINTIFF repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

183.    New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

184.    DEFENDANTS engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against PLAINTIFF because of PLAINTIFF'S opposition to the unlawful employment practices of the DEFENDANTS.

185.    PLAINTIFF was retaliated against by DEFENDANTS for engaging in protected activity.

186.    PLAINTIFF complained to Individual DEFENDANTS MCNEAL and TARALLO about the sexual harassment that she faced at MAISON KAISER.

187.    Following PLAINTIFF'S complaints, PLAINTIFF was subjected to a worse hostile environment permeated with discriminatory ridicule, comments, further sexual harassment, adverse employment actions, and other retaliatory behavior.

188.    DEFENDANTS had no valid business justification for the retaliatory and abusive actions taken against PLAINTIFF following her engagement in protected activity.

189.    DEFENDANTS placed PLAINTIFF in an awkward, hostile and uncomfortable employment position as the victim of sexual harassment and discrimination.

190.    As a result of DEFENDANTS' actions, PLAINTIFF has been extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

191.   As a result of the acts and conduct complained of herein, PLAINTIFF has suffered special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering and other non-pecuniary losses.

192.   DEFENDANTS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

193.   PLAINTIFF is entitled to the maximum amount allowed under this statute/law.

**AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
UNDER NEW YORK STATE EXECUTIVE LAW - _AIDER AND ABETTOR LIABILITY_**
*(As and Against Individual Defendants McNeal and Tarallo)*

194.   PLAINTIFF repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

195.   New York State Executive Law §296 (6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

196.   Individual DEFENDANTS MCNEAL and TARALLO engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory and retaliatory conduct.

197.   Individual DEFENDANTS MCNEAL and TARALLO, as members of management of MAISON KAISER are liable for aiding and abetting MAISON KAYSER in the discrimination and wrongful retaliation faced by PLAINTIFF.

198.   Individual DEFENDANTS MCNEAL and TARALLO utilized their management statuses/positions to subject PLAINTIFF to, *inter alia*, gender discrimination and sexual harassment discrimination, retaliation, and a hostile working environment as outlined above.

28

199. Individual DEFENDANTS MCNEAL and TARALLO knew, should have known and were informed about the discriminatory, sexually harassing and hostile actions against PLAINTIFF and took no action to prevent same.

200. Individual DEFENDANTS MCNEAL and TARALLO allowed the hostile work environment against PLAINTIFF to escalate and continue.

201. Individual DEFENDANTS MCNEAL and TARALLO exposed PLAINTIFF to a hostile work environment that was permeated with discriminatory animus, ridicule, unwanted sexual touching, sexual staring, improper comments, retaliation, humiliation, scrutiny, intimidation, and adverse employment actions against PLAINTIFF.

202. Individual DEFENDANTS MCNEAL and TARALLO refused to take PLAINTIFF'S numerous complaints, or to take her concerns seriously. Instead, they allowed the hostile work environment to continue against PLAINTIFF.

203. Individual DEFENDANTS MCNEAL and TARALLO, who are managers and supervisors at DEFENDANT MAISON KAYSER with knowledge of its policies, knew or should have known that his individual actions violated the company's policies and rules, as well as PLAINTIFF'S individual rights.

204. As a result of INDIVIDUAL DEFENDANTS' MCNEAL's and TARALLO's actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

205. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering and other non-pecuniary losses.

206. INDIVIDUAL DEFENDANTS' MCNEAL'S and TARALLO'S conduct was malicious,

willful, outrageous, and conducted with full knowledge of the law.

207.    DEFENDANTS MCNEAL and TARALLO had no good faith business justification for

their actions/conduct against PLAINTIFF.

208.    PLAINTIFF is entitled to the maximum amount allowable under this statute.

<u>**AS A SIXTH CAUSE OF ACTION**</u>
**DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**NYC HUMAN RIGHTS LAW**

209.    PLAINTIFF repeats and realleges each and every allegation made in the above paragraphs

of this complaint.

210.    The <u>New York City Administrative Code</u> § 8-107(1) provides that "It shall be an unlawful

discriminatory practice: (a) For an employer or an employee or agent thereof, because of

the actual or perceived age, race, creed, color, national origin, **gender**, disability, marital

status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or

employ or to bar or to discharge from employment such person or to discriminate against

such person in compensation or in terms, conditions or privileges of employment."

211.    Administrator DEFENDANT MCNEAL utilized his positions/statuses as a

manager/supervisor/administrator, at DEFENDANT MAISON KYSER to subject

PLAINTIFF, who was a newly-hired employee, to *inter alia,* sexual harassment in that

DEFENDANT MCNEAL subjected the newly-hired PLAINTIFF to unwanted sexual

comments, flirting, staring, intimidation, and an uncomfortable sexually-hostile work

environment.

212.    DEFENDANTS MCNEAL AND TARALLO disregarded PLAINTIFF'S numerous

complaints as well as their obligations as directors/administrators, who had a duty to act in

the face of sexual harassment complaints made by PLAINTIFF and allowed the sexually-

hostile work environment to continue and escalate against PLAINTIFF.

213.    Further, DEFENDANTS' ignored and minimized PLAINTIFF'S numerous complaints and requests for assistance and/or protection against the hostile environment she faced on a daily basis at MAISON KAYSER.

214.    When PLAINTIFF complained to her supervisor about the sexual harassment, the environment became more hostile in retaliation.

215.    As a result of DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

216.    DEFENDANTS' had no good faith business justification for the actions against PLAINTIFF as described herein.

217.    As a result of the acts and conduct complained of herein, PLAINTIFF has suffered special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering and other non-pecuniary losses.

218.    DEFENDANTS' conduct was malicious, willful and conducted with full knowledge of the law.

219.    PLAINTIFF is entitled to the maximum amount allowed under this statute/law.

**AS A SEVENTH CAUSE OF ACTION FOR RETALIATION**
**UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**NEW YORK CITY HUMAN RIGHTS LAW ("NYCHRL")**

220.    PLAINTIFF repeats and realleges each and every allegation made in the above paragraphs of this complaint.

221.    The New York City Administrative Code § 8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

31

222. DEFENDANTS engaged in an unlawful discriminatory practice in violation of New York City Administrative Code § 8-107(7) by discriminating against PLAINTIFF because of PLAINTIFF'S opposition to the unlawful employment practices of DEFENDANTS.

223. DEFENDANTS engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against PLAINTIFF because of PLAINTIFF'S opposition to the unlawful employment practices of the DEFENDANTS.

224. PLAINTIFF was retaliated against by DEFENDANTS for engaging in protected activity.

225. PLAINTIFF complained to Individual DEFENDANTS MCNEAL and TARALLO about the sexual harassment that she faced on a daily basis.

226. Following PLAINTIFF'S complaints, PLAINTIFF was subjected to a worse hostile environment permeated with discriminatory ridicule, comments, further sexual harassment, adverse employment actions, and other retaliatory behavior.

227. DEFENDANTS had no valid business justification for the retaliatory and abusive actions taken against PLAINTIFF following her engagement in protected activity.

228. DEFENDANTS placed PLAINTIFF in an awkward, hostile and uncomfortable employment position as the victim of sexual harassment and discrimination.

229. As a result of DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

230. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering and other non-pecuniary losses.

231. DEFENDANTS' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

232.   PLAINTIFF is entitled to the maximum amount allowed under this statute/law.

## AS AN EIGHTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER THE NYCHRL- *AIDER AND ABETTOR LIABILITY*
### *(As and Against Individual Defendants McNeal and Tarallo)*

233.   PLAINTIFF repeats and realleges each and every allegation made in the above paragraphs of this complaint.

234.   The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to **aid, abet**, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

235.   Individual DEFENDANTS MCNEAL and TARALLO engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory and retaliatory conduct.

236.   Individual DEFENDANTS MCNEAL and TARALLO as members of management of MAISON KAYSER are liable for aiding and abetting MAISON KAYSER in the discrimination and wrongful retaliation faced by PLAINTIFF.

237.   Individual DEFENDANTS MCNEAL and TARALLO utilized their management statuses/positions to subject PLAINTIFF to, *inter alia*, gender discrimination, sexual harassment discrimination, retaliation, and a hostile working environment as outlined above.

238.   Individual DEFENDANTS MCNEAL and TARALLO knew or should have known and were informed about the discriminatory, sexually harassing and hostile actions against PLAINTIFF by DEFENDANT MCNEAL and took no action to prevent same.

239.   Individual DEFENDANTS MCNEAL and TARALLO allowed the hostile work environment against PLAINTIFF to escalate and continue.

240. Individual DEFENDANTS MCNEAL and TARALLO exposed PLAINTIFF to a hostile work environment that was permeated with discriminatory animus, ridicule, unwanted sexual touching, sexual staring, improper comments, retaliation, humiliation, scrutiny, intimidation, and adverse employment actions against PLAINTIFF.

241. Individual DEFENDANTS MCNEAL and TARALLO refused to take PLAINTIFF'S complaints, or to take her concerns seriously. Instead, they continued the hostile work environment against PLAINTIFF.

242. Individual DEFENDANT MCNEAL and TARALLO, who are managers of DEFENDANT MAISON KAYSER with knowledge of its policies, knew or should have known that their individual actions violated the company's policies and rules, as well as PLAINTIFF'S individual rights.

243. As a result of individual DEFENDANT's MCNEAL's and TARALLO's actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

244. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered special damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering and other non-pecuniary losses.

245. Individual DEFENDANTS' MCNEAL's and TARALLO's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

.

### AS A NINTH CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### *VICARIOUS EMPLOYER LIABILITY*
### *(Against Defendant Maison Kayser)*

246.   PLAINTIFF repeats and realleges each and every allegation made in the above paragraphs of this complaint.

247.   The New York City Administrative Code § 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

    a.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

        1.   the employee or agent exercised managerial or supervisory responsibility; or

        2.   the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct here that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

        3.   the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

    c.   An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

248.   DEFENDANT MAISON KAYSER violated the section cited herein as set forth.

249. DEFENDANT MCNEAL subjected PLAINTIFF to unwanted sexual harassment, gender discrimination and retaliation as alleged above.

250. DEFENDANT MAISON KAISER was aware and or should have been aware that PLAINTIFF was being subjected to unlawful discrimination, retaliation and a hostile work environment by Individual DEFENDANTS MCNEAL and TARALLO, who were acting within the scope of their authorities as directors/administrators of MAISON KAYSER as outlined in this Complaint above.

251. MAISON KAYSER was made aware of PLAINTIFF'S complaints and concerns because she complained to the supervisors/managers DEFENDANT MCNEAL and DEFENDANT TARALLO about the hostile work environment she faced.

252. DEFENDANTS either did nothing to assist PLAINTIFF and/or to investigate or abate the hostile work environment, discrimination and/or retaliation against PLAINTIFF, or DEFENDANTS' assisted in the unlawful conduct against PLAINTIFF.

253. With notice of the actions against PLAINTIFF, MAISON KAYSER's upper-level-management ignored PLAINTIFF'S concerns, refused to investigate same, and allowed retaliatory adverse employment actions to take place against PLAINTIFF.

254. Individual DEFENDANTS MCNEAL AND TARALLO would not have been able to take their respective actions against PLAINTIFF *but for* their employment and management position at DEFENDANT MAISON KAISER.

255. DEFENDANT MAISON KAYSER is therefore vicariously liable for the sexual harassment, gender discrimination, hostile environment and retaliation experienced by PLAINTIFF.

256. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered special

damages, inconvenience, loss of enjoyment of life, depression, anxiety, fear, anger, emotional pain and suffering and other non-pecuniary losses.

## JURY DEMAND

257.     Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A.     Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, the NYCHRL, and NYSHRL in that Defendants discriminated against Plaintiff on the basis of her sex/gender and retaliated against Plaintiff for complaining of sexual harassment.

B.     Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

C.     Awarding Plaintiff punitive damages;

D.     Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action pursuant to 42 U.S.C §1988 and as afforded under the above local statutes; and

E.     Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
          December 13, 2018

**PHILLIPS & ASSOCIATES,**
**ATTORNEYS AT LAW, PLLC**

/s/

By: _____
Jessica Massimi
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
(212) 248-7431
